**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MIAMI VALLEY FAIR HOUSING CENTER and CENTRAL OHIO FAIR HOUSING ASSOCIATION | * * * * | COMPLAINT |
| | | JURY DEMAND |
| Plaintiffs, | * | NO._____ |
| v. | * * | |
| PREFERRED LIVING REAL ESTATE INVESTMENTS, LLC, PREFERRED LIVING REAL ESTATE INVESTMENTS II, LLC, PREFERRED LIVING REAL ESTATE INVESTMENTS, INC., ANDOVER PARK, LLC, ANDOVER PARK II, LLC, TAYLOR HOUSE, LLC, PALMER SQUARE, LLC, CLIFTON PARK, LLC, ALEXANDER SQUARE, LLC, DAVID L. BETZ ARCHITECT, INC., and JOHNATHAN BARNES ARCHITECTURE AND DESIGN, LTD. | * * * * * * * * * * * * * * | |
| Defendants. | * | |
| ********************************** | * | |

**INTRODUCTION**

1. Plaintiffs Miami Valley Fair Housing Center ("MVFHC") and the Central Ohio Fair Housing Association ("COFHA") hereby bring this civil rights action against the developer, builder, manager, and owner of several multifamily apartment complexes designed and/or constructed by Defendants Preferred Living Real Estate Investments, LLC, Preferred Living Real Estate Investments II, LLC, and Preferred Living Real Estate Investments, Inc. ("Preferred Living Defendants"). In addition to Preferred Living Defendants, several limited liability companies individually owned or co-owned each apartment complex during the time of its development, design, and construction (collectively, "Owner Defendants"). These include

Andover Park, LLC; Andover Park II, LLC; Palmer Square, LLC; Taylor House, LLC; Clifton

Park, LLC; and Alexander Square, LLC.  Further, two architectural firms, David L. Betz

Architecture, Inc. and Johnathan Barnes Architecture and Design, Ltd., are also named as

Defendants because each designed at least one of properties at issue.  Plaintiffs allege that all

Defendants violated and continue to violate the accessibility requirements of the Fair Housing

Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments

Act of 1988 (FHAA), 42 U.S.C. §§ 3601-3619.  The FHAA requires that certain apartment

complexes built for first occupancy after March 13, 1991 be designed and constructed with

accessible and adaptable features for people with disabilities.  Plaintiffs seek monetary,

declaratory and injunctive relief to remedy violations of the FHAA.

       2.     Since at least July 2014, Defendants, who are identified in paragraphs 10 through

23 below, have engaged in a continuous pattern or practice of discrimination against people with

disabilities in violation of the FHAA.  They have done so by designing and/or constructing

multifamily dwellings, and the common use and public use areas associated with those dwellings

(hereafter referred to as "covered units" or "covered apartment complexes"), at five apartment

complexes tested or investigated by Plaintiffs, so as to deny people with disabilities the full

access to and use of these facilities that is required under the FHAA.  The apartment complexes

investigated by Plaintiffs so far are: Palmer House, Clifton Park, Andover Park, Alexander

Square, and Taylor House ("the Subject Properties").  At least three of the Subject Properties—

Palmer House, Taylor House, and Clifton Park—were constructed and first occupied within two

years of the filing of this Complaint.  Upon information and belief, Andover Park was also

constructed and first occupied within two years of this filing.  All of the properties—including

Alexander Square—are part of a continuing pattern and practice of non-compliance with the

accessibility requirements of the FHAA because they are similarly constructed, located in the same geographic area, owned and operated by the same individuals, and feature similar violations of the FHAA.

3.     Defendants' violations of the FHAA accessibility requirements have serious and significant consequences for people with disabilities.  As outlined below, the Subject Properties are replete with accessibility problems.  Several of the properties do not feature accessible entrances to common areas, as they lack walkways allowing access to common area amenities. Many of the outside pathways that do exist are too narrow to allow for wheelchair access; there are curbs without curb cuts; and designated accessible parking spaces lack the required access aisles for people with mobility impairments to leave or enter their parked vehicles.  There is insufficient clear floor space for people in wheelchairs at bathroom toilets, sinks, and tubs. Similarly, many kitchens lack sufficient floor space, and closets in many units are not appropriately accessible.  There are inaccessible routes through public and common use areas, including the property leasing offices and clubhouses.  Environmental controls and electrical outlets are placed beyond the reach range of wheelchair users.  All of this is in violation of the FHAA's accessibility requirements.  These blatant and continuing violations, and many others, effectively communicate that people with disabilities are not welcome at the Subject Properties.

4.     According to the Americans With Disabilities 2010 Study conducted by the U.S. Census Bureau, more than 56 million Americans (nearly one in five) have some form of disability, and one in eight has a severe disability.  Of that number, more than 3.6 million people over the age of 15 years use wheelchairs, and that number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. Another 11.6 million people use canes, crutches, walkers, or other mobility aids.  Accessible

housing is an essential means of ensuring that people with disabilities are able to fully participate in community life.

5. A person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps, excessively high thresholds at building or unit entrances, or excessive running slopes on the route to covered units as by a posted sign saying "No Handicapped People Allowed."  In considering the 1988 disability amendments to the FHAA, Congress stressed that enforcement of the civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers and builders who fail to construct dwellings and public accommodations accessible to, and adaptable by, people with disabilities.  H.R. REP. NO. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186.

6. Defendants' flagrant, systematic, and continuing violations of the FHAA have thwarted Congressional efforts to eradicate housing discrimination against people with disabilities; have rendered units unavailable to people with disabilities; and have frustrated the Plaintiffs' missions and caused Plaintiffs to divert their scarce resources in an attempt to redress these violations.  Enforcement of the FHAA against these Defendants is necessary because of the extensive and continuing nature of the civil rights violations at the Subject Properties that Defendants have designed and/or constructed, and are currently leasing to the public.

7. Further, Plaintiffs request as a remedy, *inter alia*, that Defendants be enjoined from refusing to permit any survey and where necessary, any retrofits of covered units that may be ordered by this Court to bring properties into full compliance with the FHAA.

## PARTIES

**A.    Plaintiffs**

8.     Plaintiff Miami Valley Fair Housing Center, Inc. ("MVFHC") is a private, non-profit organization, incorporated under the laws of Ohio.  Its mission is to eliminate housing discrimination against all persons because of race, color, religion, national origin, sex, disability, familial status, or any other characteristic protected under federal, state, or local laws, and to ensure that housing opportunities are provided without illegal discrimination.  In furthering this goal, MVFHC provides counseling, guidance, and support to individuals who encounter discrimination in their search for housing.  MVFHC also engages in activities designed to encourage fair housing practices by educating consumers of their rights and professionals of their responsibilities under the FHAA; identifying barriers to fair housing in order to counteract and eliminate discriminatory housing practices; and working with elected and government representatives to protect and improve fair housing laws.  In addition, MVFHC works closely with architects, builders, developers, and housing organizations to provide ongoing outreach and education about the accessibility requirements of the FHAA and Ohio law.  MVFHC also coordinates public distribution of information on accessibility to raise the consciousness of the community on accessible design and construction.  In particular, MVFHC has conducted extensive education and outreach efforts in the Columbus area since at least 2004.

9.     Plaintiff Central Ohio Fair Housing Association ("COFHA") is a non-profit public service organization incorporated under the laws of Ohio with its principal place of business in Columbus, Ohio.  COFHA's mission is to eliminate housing discrimination and ensure equal housing opportunity to people throughout central Ohio.  COFHA pursues its

mission through assistance to victims of discrimination, education and outreach, public policy initiatives, advocacy, investigation of fair housing violations, and enforcement.

**B.     Preferred Living Defendants**

10.     Defendant Preferred Real Estate Investments, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  Preferred Real Estate Investments, LLC is the developer, builder, and/or owner of some or all of the Subject Properties.  At all relevant times, Preferred Real Estate Investments, LLC was managed, owned, and/or controlled by Michael Kenney.

11.     Defendant Preferred Living Real Estate Investments II, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  Preferred Living Real Estate Investments II, LLC is the developer, builder, and/or owner of some or all of the Subject Properties.  At all relevant times, Preferred Living Real Estate Investments II, LLC was managed, owned, and/or controlled by Michael Kenney.

12.     Defendant Preferred Living Real Estate Investments, Inc. is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  Preferred Living Real Estate Investments, Inc. is the developer, builder, and/or owner of some or all of the Subject Properties.  At all relevant times, Preferred Living Real Estate Investments, Inc. was managed, owned, and/or controlled by Nicholas King and Michael Kenney.

13.     Either directly or through affiliated companies, Preferred Living Defendants have been, and continue to be, in the business of developing and building multifamily residential properties that are covered by the FHAA, including but not limited to:

        a.  Andover Park, 1261 Gabrielle Elaine Drive, Columbus, OH 43228;

        b.  Taylor House, 5001 Olentangy River Road, Columbus, OH 43214;

     c.   Alexander Square, 747 Worthington Woods Boulevard, Worthington, OH 43085;

     d.   Palmer House, 4121 Palmer Park Circle East, New Albany, OH 43054; and

     e.   Clifton Park, 4110 Clifton Park Circle West, New Albany, OH 43054.

In one or more capacities, Preferred Living Defendants are responsible for the design and/or construction of these properties. For example, Preferred Living Real Estate Investments, LLC is listed as the signatory on the Affidavit of Completion of Construction for Clifton Park and Palmer House. It is also identified as the "owner/developer" of Andover Park in architectural plans filed with the City of Columbus. Preferred Living Real Estate Investments, Inc. is identified as the original contractor on the Notice of Commencement for Alexander Square, Clifton Park, Palmer House, Andover Park, and Taylor House. It is also listed as the "applicant" and "owner" on the Clifton Park clubhouse's Certificate of Occupancy and as the owner on Palmer House's Certificate of Occupancy, both in 2013. Preferred Living Real Estate Investments II, LLC is listed as the signatory on the Notice of Commencement for Alexander Square and identified in filings with the Secretary of State's office as doing business as "Preferred Living." Preferred Living's website identifies each of the Subject Properties as "communities" that it has "develop[ed] and manag[ed]." Other documents also link Preferred Living Defendants to the Subject Properties.

## C. Owner Defendants

14. Andover Park, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082. It is the former owner of the Andover Park complex and owned the complex at the time of its design and/or construction. At all relevant times, Andover Park was managed, owned, and controlled by Michael Kenney.

15.     Taylor House, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  It is the owner of the Taylor House complex and owned the complex at the time of its design and/or construction.  At all relevant times, Taylor House was managed, owned, and/or controlled by Michael Kenney.

16.     Alexander Square, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  It is the owner of the Alexander Square complex and owned the complex at the time of its design and/or construction.  At all relevant times, Alexander Square was managed, owned, and/or controlled by Michael Kenney.

17.     Palmer Square, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  It is the owner of the Palmer House complex and owned the complex at the time of its design and/or construction.  At all relevant times, Palmer House was managed, owned, and/or controlled by Michael Kenney.

18.     Clifton Park, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  It is the owner of the Clifton Park complex and owned the complex at the time of its design and/or construction.  At all relevant times, Clifton Park was managed, owned, and/or controlled by Michael Kenney.

19.     Andover Park II, LLC is an Ohio corporation with a registered address of 470 Olde Worthington Road, Suite 470, Westerville, OH 43082.  It is the current owner of the Andover Park complex, which was transferred to it by Andover Park, LLC in November 2014.  At all relevant times, Andover Park was managed, owned, and/or controlled by Michael Kenney.  Andover Park II, LLC is liable for purposes of remediation only.

20.     Owner Defendants are liable only for violations at the Subject Property that each respectively owned or controlled at the time of its design and/or construction.  Owner

Defendants that currently own or control a Subject Property are also liable for purposes of remediation.

21.     Upon information and belief, Owner Defendants to this action are, and at all relevant times have been, subsidiaries of, controlled by, mere instrumentalities of, and agents of Preferred Living Defendants, such that Preferred Living Defendants are liable for the acts of Owner Defendants alleged herein.  Preferred Living Defendants and Owner Defendants are controlled by the same individuals.

**D.     Architect Defendants**

22.     David L. Betz Architect, Inc. is an Ohio corporation with a registered address of 1948 Fishinger Road, Columbus, Ohio 43221.  It is the architectural firm that designed Clifton Park and Andover Park.

23.     Johnathan Barnes Architecture and Design, Ltd. is an Ohio corporation with a registered address of 399 East Main Street, Suite 210, Columbus, Ohio 43215.  It is the architectural firm that designed Taylor House.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 3613(a).

25.     Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because all Defendants conduct business in and/or are residents of the district, a substantial part of the events and omissions giving rise to the claims occurred in the district, and a substantial part of the properties that are the subject of this action is situated in the district.

## STATUTORY AND REGULATORY FRAMEWORK

26.     Congress enacted the FHAA design and construction accessibility requirements as part of a comprehensive revision of the Fair Housing Act to prohibit discrimination on the basis of disability and to increase housing opportunities for people with disabilities.

27.     In response to Congressional findings regarding the impact of architectural barriers on people with disabilities, the FHAA mandated that every multifamily apartment building containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multifamily dwellings"), be subject to certain design and construction requirements.  All ground floor units must have the following features, as must all units served by an elevator:

    a.   An accessible building entrance on an accessible route;

    b.   Public use and common use areas that are readily accessible to, and usable by, people with disabilities;

    c.   Doors into and within covered units and in public and common use areas that are sufficiently wide to allow passage by people in wheelchairs;

    d.   An accessible route into and through the dwelling;

    e.   Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

    f.   Reinforcements in bathroom walls that allow for the later installation of grab bars; and

    g.   Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

28.    Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHAA design and construction regulations in January 1989, see 24 C.F.R. § 100.205 (2008).  HUD published the final Fair Housing Act Accessibility Guidelines on March 6, 1991 (hereinafter "FHAAG").  These Guidelines incorporate the requirements of the American National Standard for Buildings and Facilities Providing Accessibility and Usability for Physically Handicapped People, A117-1-1986 (hereinafter "ANSI"), see 56 Fed. Reg. 9472 (Mar. 6, 1991).  HUD also published the Fair Housing Act Design Manual in August 1996 and revised it in August 1998.

## FACTUAL AND LEGAL BACKGROUND

29.    Plaintiffs became aware in July 2014 that multifamily housing complexes designed and/or constructed by the Defendants did not include the required elements of accessible and adaptable design.  They subsequently initiated an investigation of the Subject Properties.  The investigation included site inspections by Plaintiffs' staff, the taking of preliminary measurements, evaluations by two independent experts, the review of architectural plans, and public records research.

30.    The investigation identified multiple FHAA design and construction violations at each property.  Defendants' violations of 42 U.S.C. § 3604(f)(3)(C) at the Subject Properties include, but are not limited to, those outlined in paragraphs 31 through 39 below.  These allegations represent just some of the evidence of a continuing pattern and practice of Defendants' failure to design and construct covered units and public and common use areas in accordance with 42 U.S.C. § 3604(f)(3)(C) and are not intended as an exhaustive inventory of such violations.

31.     Defendants at Palmer House, Andover Park, and Clifton Park have failed to design and/or construct covered, multifamily dwellings with an accessible entrance on an accessible route in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(I) and 24 C.F.R. § 100.205(a) (2008). For example, many ground floor units are without an accessible route to common use amenities due to the lack of walkways throughout the properties. The vehicle driveways are the main pathways throughout the properties, and they are not safe and accessible routes. The properties lack a connecting pedestrian-accessible route from the public street and public transportation stops to the management office, due to the lack of walkway and curb ramps in particular. At Palmer House and Clifton Park, the main clubhouse/leasing office entrance lacks an accessible route and an accessible entrance, because there are several steps up to the elevated building entrance landing.

32.     Defendants at the Subject Properties have failed to design and/or construct public and common use areas that are readily accessible to and usable by people with disabilities in compliance with 42 U.S.C. § 3604(f)(3)(C)(i) and 24 C.F.R. § 100.205(c)(1) (2008). At Palmer House, the trash, pool, and mailbox areas all lack accessible parking spaces; the property features both surface and garage parking generally but lacks an accessible garage space; several of the accessible parking spaces exceed the maximum allowable slope or feature signs that are too low; the clubhouse/leasing office has non-compliant doors, bathrooms, and work stations; and the pool and spa area has several non-compliance issues, including gates that lack compliant maneuvering space and walkways to the elevated lounge seating area that are not fully compliant. In addition, the resident mailbox area lacks an accessible route, as the existing curb ramp exceeds the maximum allowed slope, and the upper rows of mailboxes exceed permissible and usable reach range; the walkway along the mailboxes has excessive slope; and the existing

ramp to the trash compactor also exceeds the maximum allowed slope.  Similar problems exist at the other Subject Properties.  For example, at Andover House and Clifton Park, common area amenities lack accessible parking and garage spaces.  At Taylor House, there is a lack of accessible garage space and public bathrooms.  At Alexander Square and Clifton Park, the gym and tanning bed areas are accessible by stairs only, and no wheelchair access is provided. Defendants' design and construction practices in their public and common use areas, as described in this paragraph, are in violation of FHAAG Requirement 2, and ANSI 4.2.5; 4.2.6; 4.3.2; 4.3.3; 4.3.8; 4.3.9; 4.5.2; 4.6.2; and 4.7.1; 4.7.2.

33.	Defendants at Subject Properties have failed to design and/or construct doors that are sufficiently wide to allow passage by people in wheelchairs in compliance with 42 U.S.C. § 3604(f)(3)(C)(ii) and 24 C.F.R. § 100.205(c)(2) (2008).  For example, closet doors within covered units are insufficiently wide to allow use by people in wheelchairs, in violation of FHAAG Requirement 3, Guideline 2, fig. 1.

34.	Defendants at Subject Properties have failed to design and/or construct accessible routes into and through premises within covered dwellings in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(I) and 24 C.F.R. § 100.205(c)(3)(i) (2008).  For example, there are covered units in which the routes to bathrooms and kitchen entries are inaccessible to wheelchair users because they do not comply with FHAAG's minimum-width standards; there is generally a lack of a sufficiently wide accessible route throughout the unit, in violation of FHAAG Requirement 4, Guidelines 1 and 2; the interior threshold to the patio is excessively high, in violation of FHAAG Requirement 4, Guidelines 4 and 5, and ANSI 4.3.3; 4.3.8; and patio doors also lack sufficient clear opening width.

35.     Defendants at Palmer House have failed to design and/or construct light switches, electrical outlets, and/or environmental controls in accessible locations in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(II) and 24 C.F.R. § 100.205(c)(3)(ii) (2008).  For example, in most covered units, the operable parts of environmental controls are beyond the reach ranges identified in FHAAG Requirement 5, ANSI 4.2.5, ANSI 4.2.6, and ANSI 4.25.3; and in all covered units, the vertical electrical outlets located in the kitchen are beyond the reach ranges identified in FHAAG.

36.     Defendants at the Subject Properties have failed to design and/or construct usable kitchens such that an individual in a wheelchair can maneuver about the space in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and 24 C.F.R. § 100.205(c)(3)(iv) (2008).  For example, in some unit types, there is insufficient centered, clear floor space at the sink or kitchen range for a parallel or forward approach by a wheelchair user; there is insufficient turning space in the kitchens; and several unit types lack the required clearance space between countertops and opposing counters, cabinets, appliances, and walls, in violation of FHAAG Requirement 7, Guideline 1, and ANSI 4.32.5.1; 4.32.5.2.

37.     Defendants at Subject Properties have failed to design and/or construct usable bathrooms such that an individual in a wheelchair can maneuver about the space in compliance with 42 U.S.C. § 3604(f)(3)(C)(iii)(IV) and 24 C.F.R. § 100.205(c)(3)(iv) (2008).  For example, in covered units, there are bathrooms with insufficient centered, clear floor space for a parallel or forward approach by a wheelchair user to the lavatory or that lack sufficient maneuvering space; units that feature toilets located in alcoves that lack sufficient clear floor space width or that are otherwise inaccessible; and showers without sufficient floor spaces to allow use by an individual

14

in a wheelchair.  Defendants' improper design and construction of its bathrooms, as described in this paragraph, are in violation of FHAAG Requirement 7, Guideline 2.

38.    The FHAA noncompliant features of Andover Park described above are evident from the plans created by Defendant David L. Betz Architect, Inc.

39.    The FHAA noncompliant features of Taylor House described above are evident from the plans created by Defendant Jonathan Barnes Architecture and Design, Ltd.

40.    Further, by failing to provide the accessible and adaptable features required by 42 U.S.C. § 3604(f)(3)(C) at the Subject Properties for people with physical disabilities, including but not limited to those outlined in paragraphs 31 through 39 above, Defendants have made dwellings unavailable to people with physical disabilities in violation of 42 U.S.C. § 3604(f)(1), and/or have discriminated against them in the terms, conditions, or privileges of the rental of dwellings in violation of 42 U.S.C. § 3604(f)(2).

## INJURY TO PLAINTIFFS

41.    As a result of Defendants' actions described above, Plaintiffs have been directly and substantially injured.  Plaintiffs have been frustrated in their mission to eradicate discrimination in housing and in carrying out the programs and services they provide, including encouraging integrated living patterns, educating the public about fair housing rights and requirements, educating and working with industry groups on fair housing compliance, providing assistance to individuals and families looking for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.  Plaintiffs have also been damaged by having to divert scarce resources that could have been used to provide these services to instead identify and counteract Defendants' discriminatory conduct.

42.     In addition, Plaintiffs have invested considerable time and effort in education about the importance of accessible housing for people with disabilities, in an attempt to secure compliance by entities involved in the design and construction of covered multifamily dwellings.  Each time Defendants designed and constructed covered dwellings that did not comply with the FHAA and/or failed to remediate such violations, they frustrated the mission of Plaintiffs and Plaintiffs' previous and ongoing education efforts.  Defendants' actions likely would have the effect of discouraging people with disabilities from living at that dwelling and encouraging other entities involved in the design, construction, and rental of covered units to disregard their own responsibilities under the FHAA.  Defendants' conduct reduced the effectiveness of Plaintiffs' outreach efforts and caused Plaintiffs to provide additional educational programs to rebut the impression that constructing inaccessible residential housing is permissible.

43.      Defendants' continuing discriminatory practices have forced Plaintiffs to divert significant and scarce resources to identify, investigate, and counteract Defendants' discriminatory practices, and such practices have frustrated Plaintiffs' other efforts against discrimination, causing Plaintiffs to suffer concrete and demonstrable injuries.

44.     Plaintiffs have conducted site visits, investigations, reviews, surveys, or tests at the Subject Properties, resulting in the diversion of their resources in terms of staff time, salaries, and travel and incidental expenses that they would not have had to expend were it not for Defendants' violations.

45.     Until remedied, Defendants' unlawful, discriminatory actions will continue to injure Plaintiffs, by inter alia:

16

a.     interfering with efforts and programs intended to bring about equality of

opportunity in housing;

b.     requiring the commitment of scarce resources, including substantial staff

time and funding, to investigate and counteract Defendants' discriminatory

conduct, thus diverting those resources from the Plaintiffs' other activities and

services, such as education, outreach, and counseling; and

c.     frustrating Plaintiffs' missions and purposes of promoting the equal

availability of housing to all persons without regard to any protected category,

including disability.

46.     Defendants' discriminatory conduct will also deprive individuals to whom

Plaintiffs provide services and others living in and near the Subject Properties of the benefit of

living in a diverse community that includes people who have disabilities and use wheelchairs.

## LEGAL CLAIMS

47.     Plaintiffs adopt and re-allege the allegations of paragraphs 1 through 46 of this

Complaint.

48.     Each of the properties specified in paragraph 13 above contain residential

apartment units that are "dwelling[s]" within the meaning of 42 U.S.C. § 3602(b).

49.     At the properties specified in paragraph 13 above, all ground-floor units in non-

elevator buildings are "covered multifamily dwellings" within the meaning of 42 U.S.C.

§ 3604(f)(7)(A), were built for first occupancy after March 13, 1991, and are subject to the

design and construction requirements set forth in 42 U.S.C. § 3604(f)(3)(C) of the FHAA.  The

public and common use areas of the properties specified in paragraph 13 above are also subject

to the design and construction requirements of 42 U.S.C. § 3604(f)(3)(C).

50. Defendants, together and separately, have failed to design and/or construct the Subject Properties so that:

      a.    all ground floor units are served by an accessible route into and through the dwelling;

      b.    the public use and common use portions are readily accessible to and usable by people with disabilities;

      c.    the doors into and within covered units and in public and common use areas are sufficiently wide to allow passage by people in wheelchairs;

      d.    there is an accessible route into and through the covered units;

      e.    light switches, electrical outlets, thermostats, and other environmental controls are in accessible locations; and

      f.    the covered units have usable kitchens and bathrooms such that a person in a wheelchair can maneuver about the space.

51. Defendants' violations at all of the Subject Properties have been ongoing and continuing since their design and construction.

52. Defendants failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. § 100.205 (2008).

53. To the extent that any Owner Defendant did not own or control a Subject Property at the time of its design and construction, such an Owner Defendant remains responsible for remediation of any Subject Property now under its ownership or control. Owner Defendants, as they are owned and operated by the same individuals as the Preferred Living Defendants, knew or should have known of the numerous violations at the Subject Properties at the time the Subject

Properties were transferred.  Because Owner Defendants had actual or constructive knowledge of such violations, they are required to address them.

54.     Through the actions and inactions described above, all Defendants, together and separately, have:

> a.     discriminated in the rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

> b.     discriminated against persons because of their disabilities in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with the rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

> c.     failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations, 24 C.F.R. § 100.205 (2008).

## JURY TRIAL DEMAND

55.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1)     Enter a declaratory judgment that the foregoing acts, policies, and practices of the Defendants violate the FHAA, 42 U.S.C. §§ 3604(f)(1), (f)(2) and (f)(3)(C), and the applicable regulations;

(2)     Enter a permanent injunction enjoining the Defendants, their officers, directors, employees, agents, successors, assigns, and all other persons in active concert or participation with any of them, from failing or refusing to:

A.     bring the covered dwelling units and the public use and common use areas at the Subject Properties into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; comply with such procedures for inspection and certification of the corrections performed as may be ordered by this Court; and perform or allow such other acts as may be necessary to effectuate any judgment of this Court against them;

B.     design or construct any covered multifamily dwellings in the future in compliance with 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

C.     take such steps as will eliminate, to the fullest extent practicable, the lingering effects of their unlawful housing practices;

(3)     Order the Defendants to:

A.     survey each and every apartment community for which they or a related entity had a role in the design or construction since March 13, 1991, other than the Subject Properties ("the Remaining Portfolio"), and assess the compliance of each with the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations;

B.     report to the Court the extent of the noncompliance of the properties in the Remaining Portfolio with the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations; and

C.      bring each and every property in the Remaining Portfolio into compliance with the requirements of 42 U.S.C. § 3604(f)(3)(C) and the applicable regulations;

(4)     Enter a permanent injunction enjoining Defendants and the owner of any other covered apartment complex in the Remaining Portfolio not presently known to Plaintiffs from failing or refusing:  to permit the survey of any of their covered properties that were designed and/or constructed by the Defendants and any retrofits ordered by the Court to be made at such property; to comply with such procedures for inspection and certification of the retrofits performed as may be ordered by this Court; and to perform or allow such other acts as may be necessary to effectuate any judgment against the Defendants;

(5)     Award such damages as will fully compensate Plaintiffs for their injuries incurred as a result of the Defendants' discriminatory housing practices and conduct alleged herein;

(6)     Award such punitive damages against the Defendants as are proper under law to punish them for their malicious and recklessly indifferent conduct alleged herein and to effectively deter similar conduct in the future, pursuant to 42 U.S.C. § 3613(c)(1)(a);

(7)     Award Plaintiffs their costs and attorneys' fees incurred herein, pursuant to 42 U.S.C. § 3613(c)(2); and

(8)     Order such other relief as the Court deems just and proper.


August 19, 2015                                    Respectfully submitted,


                                                   /s/ Stephen M. Dane
                                                   Stephen M. Dane
                                                   Ryan C. Downer*
                                                   Tara K. Ramchandani
                                                   RELMAN, DANE & COLFAX, PLLC
                                                   1225 19th St., NW, Suite 600
                                                   Washington, D.C. 20036-2456

Tel:     (202) 728-1888
Fax:     (202) 728-0848
E-mail: sdane@relmanlaw.com
          rdowner@relmanlaw.com
          tramchandani@relmanlaw.com

*application for admission pro hac vice to be filed*